IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

**ANGELA MARIE DICKERSON,**

    **Plaintiff,**

v.                                                                 Civil Action No. 3:18-cv-00581

**ANDREW SAUL,[1]**
**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Plaintiff Angela Marie Dickerson ("Claimant") seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–33, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–83f. By standing order entered on January 4, 2016, and filed in this case on April 20, 2018, this matter was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 2.) Presently pending before this Court are Plaintiff's Memorandum in Support of Plaintiff's Motion for Judgment on the Pleadings (ECF No. 14)[2] and the Commissioner's Brief in Support of Defendant's Decision (ECF No. 15).

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).  *See also* 42 U.S.C. § 405(g) (stating that action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[2] Plaintiff did not file a separate motion for judgment on the pleadings.  Accordingly, the undersigned construes the memorandum as a motion for judgment on the pleadings.

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Claimant's request for judgment on the pleadings (ECF No. 14), **GRANT** the Commissioner's request to affirm his decision (ECF No. 15), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

## I. BACKGROUND

### A. Information about Claimant and Procedural History of Claim

Claimant was 47 years old at the time of her alleged disability onset date and 50 years old on the date of the decision by the Administrative Law Judge ("ALJ"). (Tr. at 23.)[3] She holds a bachelor's degree and has completed some coursework toward a master's degree. (*Id.* at 17, 46, 281.) She has previously worked as an office assistant. (*Id.* at 309.) Claimant alleges that she became disabled on February 13, 2015, due to panic attacks, body dysmorphia, trichotillomania, severe depression, post-traumatic stress disorder, attention-deficit disorder, diabetes, carpal tunnel, anemia, and asthma. (*Id.* at 236, 253, 280.)

Claimant completed her DIB application on June 2, 2015 (*id.* at 234–42), and her SSI application on June 22, 2015 (*id.* at 253–58). Her claims were initially denied on August 6, 2015, and again upon reconsideration on November 12, 2015. (*Id.* at 140–52, 158–64, 165–71.) Thereafter, on January 12, 2016, Claimant filed a written request for hearing. (*Id.* at 172–76.) An administrative hearing was held before an ALJ on November 15, 2017, in Huntington, West Virginia. (*Id.* at 40–68.) On November 27, 2017, the ALJ entered an unfavorable decision. (*Id.* at 7–31.) Claimant then sought review of the ALJ's decision by the Appeals Council on January 15, 2018. (*Id.* at 231–32.) The Appeals Council denied Claimant's request for review on April 2,

---

[3] All references to "Tr." refer to the Transcript of Proceedings filed in this action at ECF No. 11.

2018, and the ALJ's decision became the final decision of the Commissioner on that date. (*Id.* at 1–6.)

Claimant timely brought the present action on April 23, 2018, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) The Commissioner filed an Answer (ECF No. 10) and a transcript of the administrative proceedings (ECF No. 11). Claimant subsequently filed her Memorandum in Support of Plaintiff's Motion for Judgment on the Pleadings (ECF No. 14), and in response, the Commissioner filed his Brief in Support of Defendant's Decision (ECF No. 15). As such, this matter is fully briefed and ready for resolution.

B. *Relevant Medical Evidence*

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and summarizes it here for the convenience of the United States District Judge.

1. *Treatment for Osteoarthritis and Related Pain*

Claimant presented to her primary care physician, Dr. Dawn MacFarland ("Dr. MacFarland"), on July 21, 2014, complaining of "pain in multiple joints." (Tr. at 893.) Dr. MacFarland noted that Claimant had a history of osteoarthritis. (*Id.*) However, her examination was normal. (*Id.* at 893–94.) Dr. MacFarland diagnosed Claimant with "[g]eneralized osteoarthritis" and "[c]hronic pain" that was controlled with medication. (*Id.* at 894.) Claimant continued to complain of pain in her lower extremities at appointments throughout the year, but her examinations were normal. (*Id.* at 901–13.)

On October 27, 2014, Claimant presented to Dr. Stanley S. Tao, M.D. ("Dr. Tao"), an orthopedic surgeon, complaining of knee pain. (*Id.* at 661.) Her examination was largely normal, but Dr. Tao gave her an injection in both knees. (*Id.* at 661–62.) Claimant returned to Dr. Tao on December 9, 2014, complaining that her knee pain had returned. (*Id.* at 659–60.) Again,

3

Claimant's examination was largely normal absent some tenderness and grinding in her knees. (*Id.*) Dr. Tao gave Claimant another injection in both knees on January 21, 2015. (*Id.* at 657.)

At an appointment on January 19, 2015, Dr. MacFarland observed that the neuropathy in Claimant's extremities caused by her diabetes "seems worse" and attributed it to steroids Claimant was using. (*Id.* at 916.) On March 2, 2015, Dr. MacFarland observed that Claimant's pain worsened "with worsening depression" and advised Claimant to "treat the depression." (*Id.* at 923.) She also noted that Claimant's neuropathy caused her left foot to "go[] numb to ankle." (*Id.*) On October 19, 2015, Claimant presented to Dr. MacFarland complaining that her neuropathy had worsened and that she was experiencing a "burning, stabbing, stinging, and itching" pain. (*Id.* at 935.) Her examination was normal, but Dr. MacFarland started her on a new medication. (*Id.* at 936–37.) Claimant continued to complain of pain and swelling at an appointment on February 10, 2016. (*Id.* at 939.) However, her examination was normal, and Dr. MacFarland made no changes. (*Id.* at 940.) At appointments on January 23 and April 6, 2017, Dr. MacFarland noted that Claimant's osteoarthritis was "controlled." (*Id.* at 952, 955.)

On December 21, 2016, Claimant presented to Dr. Kevin D. Brown, DPM ("Dr. Brown"), a podiatrist, complaining of foot pain. (*Id.* at 1566.) Dr. Brown observed some pain, tenderness, and swelling in Claimant's feet, but her examination was otherwise normal. (*Id.* at 1566–67.) Dr. Brown diagnosed Claimant with a neuroma in her left foot and gave her an injection. (*Id.* at 1567.) Claimant returned to Dr. Brown on July 19, 2017, because she had stubbed her toe and was experiencing pain and weakness. (*Id.* at 1564.) She reported "increased pain" and "constant swelling" in her feet. (*Id.*) Dr. Brown again observed some pain, tenderness, and swelling in Claimant's feet, but her examination was otherwise normal. (*Id.* at 1564–65.) He prescribed a topical gel. (*Id.* at 1565.)

Claimant was examined by Preferred Home Health on August 15, 2017. (*Id.* at 1630.) She was observed to have "[l]imited ambulation." (*Id.* at 1632.) She described her pain as a "dull ache," and it was determined not to be severe. (*Id.* at 1634.) Claimant was observed to "[m]ake[] major and frequent changes in position without assistance" and "[m]ove[] in bed and in chair independently" with "sufficient muscle strength to lift up completely during move." (*Id.* at 1635–36.) She did not use a cane. (*Id.* at 1636.) The strength of Claimant's lower extremities was rated "Fair" because Claimant was able to "[m]ove[] joint and appl[y] weak resistance." (*Id.* ant 1637.) She was determined to be at risk for falls but reported no falls in the previous three months. (*Id.* at 1639, 1643.)

    2. *Treatment for Carpal Tunnel Syndrome and Related Pain*

Claimant presented to her primary care physician, Dr. MacFarland, on August 12, 2014, complaining of wrist pain. (*Id.* at 898.) She reported that her prescribed medication helped her pain and that she had purchased a wrist brace. (*Id.*) Her examination was normal. (*Id.* at 899.) On August 20, 2014, Claimant presented to Dr. Luis E. Bolano, M.D. ("Dr. Bolano"), an orthopedic surgeon, complaining of wrist pain. (*Id.* at 664.) Dr. Bolano diagnosed Claimant with carpal tunnel syndrome and gave her an injection in her right wrist and a splint. (*Id.* at 665.) Claimant also complained of wrist pain and numbness at an appointment with Dr. MacFarland on September 8, 2014, but her examination was again normal. (*Id.* at 901–02.) On December 3, 2014, Claimant reported a worsening of the neuropathy in her fingers, but her examination was normal. (*Id.* at 911–12.)

On July 27, 2015, Claimant presented to Dr. MacFarland again complaining of wrist pain and numbness. (*Id.* at 932.) Her examination was again normal. (*Id.* at 933.) Dr. MacFarland observed that Claimant was wearing the brace. (*Id.*)

5

Upon examination by Preferred Home Health on August 15, 2017, Claimant's range of motion in her wrists and forearms was observed to be within functional limits. (*Id.* at 1637.) The range of motion in her hands was observed to be within normal limits. (*Id.* at 1642.)

*3. Opinion of Dr. Rashmi Kumar, M.D.*

Dr. MacFarland referred Claimant to Dr. Rashmi Kumar, M.D. ("Dr. Kumar"), a psychiatrist, for an appointment on June 29, 2011. (*Id.* at 767.) She presented to Dr. Kumar sporadically over the next few years. (*See id.* at 728–58.)

Claimant saw Dr. Kumar more regularly during the first half of 2015. (*See id.* at 704–24, 804–09.) She often reported stress caused by her employment, her family relationships, and her health. (*E.g.*, *id.* at 705–06, 710, 717, 719, 804.) She told Dr. Kumar that she missed work frequently and cried or had panic attacks at work after being moved to the front desk from a cubicle. (*Id.* at 706, 712, 719.) However, Claimant refused to take the medication Dr. Kumar prescribed because she "was afraid" or it "caus[ed] side effects." (*Id.* at 713.) On August 19, 2015, Dr. Kumar completed a tax form in which he opined that Claimant was disabled due to her "multiple psychiatric disabilities which interfere with gainful employment." (*Id.* at 810.)

Claimant did not again present to Dr. Kumar until October 5, 2016. (*Id.* at 1653–55.) She reported that she was "[b]ack in school" but "behind in doing her assignments." (*Id.* at 1563.) She continued to report stress from her family relationships. (*Id.* at 1653, 1657, 1659.) On October 30, 2016, she again reported being "stressed by school" and "behind in her assignments," but at her next appointment, she told Dr. Kumar that she "had a 4.0." (*Id.* at 1656, 1658.)

At her appointments in 2017, Claimant reported issues with her physical health and continued stress caused by school, her family relationships, and legal proceedings. (*Id.* at 1661–72.) On March 30, 2017, Dr. Kumar noted that Claimant was "weeping" and "asking [him] to hospitalize her." (*Id.* at 1662.) On September 18, 2017, Dr. Kumar observed that Claimant was

"[v]ery tearful" and "wants to isolate [herself] esp[ecially] she wants to get away from her kids." (*Id.* at 1671.) He further observed that she was "picking at her skin" and "pulling [her] hair compulsively." (*Id.* at 1672.)

4. *Mental Health Examination: Cynthia L. Clay, M.A.*

On September 28, 2015, psychologist Cynthia L. Clay, M.A. ("Ms. Clay") completed a Routine Abstract Form – Mental for Claimant. (*Id.* at 823–25.)[4] Ms. Clay related that Claimant was "very easily overwhelmed" and "may have panic attacks." (*Id.* at 823.) She also noted "problems managing details" such as "paperwork completion" and appointments. (*Id.*) Ms. Clay related that as of March 31, 2015, Claimant was depressed, anxious, and sad, but had no delusions, hallucinations, or suicidal or homicidal ideation. (*Id.* at 824.) She noted that Claimant's perceptions and judgment were normal, but she had "[p]reoccupations" with her thoughts, and her judgment was "[m]oderately [d]eficient." (*Id.*) Claimant's immediate memory was observed to be "[m]ildly deficient," and her recent and remote memory were normal. (*Id.*) Ms. Clay stated that Claimant's social functioning and concentration were "[m]oderately [d]eficient" and estimated moderate deficiencies in her task persistence and pace, as well. (*Id.*)

C. *Sequential Evaluation Process*

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process to aid in this determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861

---

[4] Claimant had been treated by Ms. Clay beginning on March 31, 2015. (*See* Tr. at 1442–44.)

7

(4th Cir. 2017). The ALJ proceeds through each step until making a finding of either "disabled" or "not disabled"; if no finding is made, the analysis advances to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985); *see Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step.

At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ gleans this information from the available medical evidence. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements will result in a finding of "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Similarly, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity" ("RFC") before proceeding to the fourth step. *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant's RFC reflects "her ability to perform work despite her limitations." *Patterson v. Comm'r*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work." *Lewis*, 858 F.3d at 862. "In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Monroe*, 826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

When the claimant alleges a mental impairment, the first three steps of the sequential evaluation process and the RFC assessment are conducted using a "special technique" to "evaluate the severity of [the] mental impairment[]." 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *see Patterson*, 846 F.3d at 659. Considering the claimant's "pertinent symptoms, signs, and laboratory findings," the ALJ determines whether the claimant has "a medically determinable mental impairment(s)" and "rate[s] the degree of functional limitation resulting from the impairment(s)" according to certain criteria. 20 C.F.R. §§ 404.1520a(b), 416.920a(b); *see id.* §§ 404.1520a(c), 416.920a(c). "Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment." *Patterson*, 846 F.3d at 659; *see* 20 C.F.R. §§ 404.1520a(d), 416.920a(d).

9

"If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities." *Patterson*, 846 F.3d at 659.

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe*, 826 F.3d at 180. If she does not, then "the ALJ proceeds to step five." *Lewis*, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether she can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find her "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot perform other work, the ALJ will find her "disabled." *Id.*

Applying the sequential evaluation process in this case, the ALJ concluded that Claimant satisfied the insured status requirements and was insured through the date of the decision. (Tr. at 12.) He further determined that Claimant had not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*) He found that Claimant's osteoarthritis of the knees and ankles, carpal tunnel syndrome, diabetes, neuropathy, obesity, depression, and anxiety constituted "severe" impairments. (*Id.* at 13.) However, he found that those impairments, or a combination thereof, failed to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1.  (*Id.* at 14–16.)  Upon assessing Claimant's RFC, the ALJ determined that Claimant is able "to perform light work . . . except [she] can occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds; can occasionally balance, stoop, and occasionally kneel, crouch, and crawl," and "[c]an frequently handle and finger with bilateral upper extremities."  (*Id.* at 16.)  The ALJ further found that Claimant "[s]hould alternate between sitting and standing every hour for 5 minutes" and "[s]hould avoid concentrated exposure to extreme cold, vibration, unprotected heights and moving machinery." (*Id.*)  In addition, the ALJ found that Claimant "[c]an understand, retain and carry out simple instructions[] for extended two-hour periods in a normal work day/week" and "perform simple, routine and repetitive tasks not at a production rate pace" while "hav[ing] occasional interactions with public, coworkers, and supervisors." (*Id.*)

The ALJ concluded that given the limitations imposed by the Claimant's RFC, she was unable to perform her past relevant work.  (*Id.* at 23.)  He noted that she is "a younger individual" with "more than a high school education" and that "[t]ransferability of job skills [was] not material to the determination of disability."  (*Id.*)  Because the ALJ determined that Claimant was unable to perform the full range of light work, he enlisted a vocational expert ("VE") to aid in his finding that Claimant is capable of working as a routing clerk, a price marker, a sorter, or an inspector.  (*Id.* at 23–24.)  As a result, the ALJ concluded that Claimant was not "under a disability . . . from February 13, 2015, through the date of this decision." (*Id.* at 24.)

## II.   LEGAL STANDARD

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard."  *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)).  "Substantial evidence" is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion," and it must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* (alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "In reviewing for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence. *Id.* (quoting *Craig*, 76 F.3d at 589).

### III. ANALYSIS

Claimant argues that the ALJ erroneously disregarded her treating physicians' opinions and instead substituted them for his own opinion. (ECF No. 14 at 9–10.) She further asserts that the ALJ disregarded her subjective complaints of pain and failed to evaluate her credibility, and that he failed to account for side effects caused by her medications. (*Id.* at 10–12.) She also argues that the ALJ failed to consider the impact of the combination of her severe impairments on her ability to work and in particular failed to consider the impacts of her obesity and of the carpal tunnel and neuropathy in her hands. (*Id.* at 12–14.)[5] Claimant asks this Court to reverse the Commissioner's decision and award her benefits or to reverse the Commissioner's decision and remand this matter to the ALJ. (*Id.* at 15–16.) The Commissioner responds that the ALJ properly discounted a "conclusory statement" from Claimant's treating physician, that he adequately evaluated her subjective complaints, and that he appropriately considered her severe impairments.

---

[5] Claimant also argues that the ALJ failed to "rebut" the "presumption of disability." (ECF No. 14 at 14–15.) However, no such presumption exists. *Salmons v. Astrue*, No. 3:09-cv-01268, 2011 WL 612866, at *16 (S.D.W. Va. Feb. 11, 2011); *see Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985) ("The ultimate burden to prove disability lies on the claimant."). Thus, Claimant's argument is without merit.

(ECF No. 15 at 8–18.) He asserts that "[t]his is an easy case" because Claimant worked and attended school during her claimed period of disability. (*Id.* at 2, 7–8.)

    A. *Opinions of Claimant's Treating Physicians*

Claimant first argues that the ALJ failed to accord proper weight to the diagnoses of Dr. Kumar and Dr. MacFarland and instead substituted his own opinion. (ECF No. 14 at 9–10.) However, she does not explain which portions of the record form the basis of this argument. (*See id.*) Accordingly, the undersigned is reduced to guessing at the essence of Claimant's assignments of error based on the ALJ's opinion.

With respect to Dr. Kumar, Claimant's psychiatrist, the ALJ assigned "some, but not great weight" to his opinion that Claimant's "multiple psychiatric disabilities . . . interfere[d] with gainful employment." (Tr. at 22.) The ALJ explained that such a statement "does not establish that [Claimant] is disabled, and is not sufficient or supportable enough to use when determining any specific [RFC] assessment." (*Id.*) Indeed, only the Commissioner has the authority to determine "whether the claimant ultimately meets the statutory definition of disabled." *Brown v. Comm'r*, 873 F.3d 251, 256 (4th Cir. 2017) (citing 20 C.F.R. § 404.1527(d)). The ALJ is obligated to "consider 'all of the medical findings and other evidence that support' the [treating physician's] opinion" but need not "make a favorable disability determination" as a result. *Id.* (quoting 20 C.F.R. § 404.1527(d)(1)). Dr. Kumar opined that Claimant was disabled for tax purposes, but he did not refer to any objective findings to support that opinion. (Tr. at 810.) The ALJ summarized Claimant's treatment by Dr. Kumar and ultimately found that Claimant did not suffer from "complete debilitation" because she "maintain[ed] her hygiene and business/financial responsibilities" while continuing to work and attend school. (*Id.* at 20, 21.) Therefore, insofar as the ALJ determined that Dr. Kumar's opinion that Claimant was disabled was inconsistent with his treatment notes and the other evidence in the record, the ALJ was entitled to give it less weight.

*Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (explaining when treating physician's opinion entitled to "controlling weight").

With respect to Dr. MacFarland, Claimant's primary care physician, the record does not include a "medical opinion" as that term is defined in the applicable regulations; it includes only Dr. MacFarland's treatment notes. *See Stalnaker v. Colvin*, No. 1:15-cv-00160, 2016 WL 8115933, at *19 & n.13 (N.D.W. Va. May 10, 2016) (distinguishing medical opinions from treatment notes), *adopted by* 2016 WL 3676591 (N.D.W. Va. July 6, 2016). The ALJ was not required to explicitly assign weight to the information gleaned from Dr. MacFarland's treatment notes. *See Morgan v. Barnhart*, 142 F. App'x 716, 721–22 (4th Cir. 2005) (explaining that "a treating physician's medical opinions" are entitled to "special weight in certain circumstances," but other information is to be evaluated along with record evidence (emphasis deleted)).

Moreover, the ALJ considered Dr. MacFarland's treatment notes in his RFC assessment. (Tr. at 19–21.) He described Dr. MacFarland's treatment of Claimant's osteoarthritis, diabetes and neuropathy, impairments that he had previously found were severe. (*Id.* at 19–20; *see id.* at 13.) The physical limitations the ALJ placed on Claimant's RFC reflect these diagnoses: the ALJ found that Claimant required five-minute breaks every hour to sit or stand; could only occasionally climb ramps and stairs and never climb ladders, ropes or scaffolds; could only occasionally balance, stoop, kneel, crouch, and crawl; and could "handle and finger" frequently. (*Id.* at 16.) Claimant has not explained how Dr. MacFarland's treatment notes reflect further limitations. *See Parsons v. Berryhill*, No. 3:18-cv-01107, 2019 WL 2252023, at *11 (S.D.W. Va. May 2, 2019) ("[I]t is not enough to merely point to a medical diagnosis in order to establish disability. Instead, Claimant must also show how that condition results in an actual functional limitation."), *adopted by* 2019 WL 2256395 (S.D.W. Va. May 24, 2019).

Finally, to the extent Claimant argues that her impairments meet or medically equal a listed impairment, she has identified neither the listing to which she refers nor any record evidence demonstrating that she meets the listing. (ECF No. 14 at 9–10.) Claimant bears the burden at that step of the sequential evaluation process. *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) ("[A]t the third step, the burden remains on the claimant . . . ." (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)). She has not met it here.

Accordingly, the undersigned **FINDS** that the ALJ properly considered the available evidence from Dr. Kumar and Dr. MacFarland.

### B. *Claimant's Subjective Complaints*

Claimant next argues that the ALJ failed to perform a credibility determination evaluating Claimant's complaints about her pain and about the side effects of her medications. (ECF No. 14 at 10–12.) To the contrary, the ALJ summarized Claimant's testimony and the record evidence and found her statements "not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 21.)

To evaluate the disabling effect of an individual's symptoms, the ALJ first determines whether "objective medical evidence" supports the existence of "a condition reasonably likely to cause the [symptoms] claimed." *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). If so, the ALJ then "evaluate[s] the intensity and persistence of [the claimant's] symptoms" to "determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). An individual's subjective complaints about her symptoms, as well as side effects of her medication, are relevant to the latter determination. *See id.* §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ engaged in this analysis. (Tr. at 17–21.) He concluded at the first step that Claimant's "medically determinable impairments could reasonably be expected to cause the

15

alleged symptoms." (*Id.* at 21.) However, after a review of Claimant's testimony and the available evidence, the ALJ found at the second step that Claimant's "statements about the intensity, persistence, and limiting effects of her symptoms" were "inconsistent" and that "the medical evidence of record does not match [Claimant's] testimony of complete debilitation." (*Id.*)

For instance, Claimant argues that she has "difficulty standing, sitting, walking, stooping, and bending" and "has seen doctors attempting to alleviate her pain." (ECF No. 14 at 10.) The ALJ noted that Claimant testified about her inability to walk long distances, stand for more than ten to fifteen minutes at a time, or sit for more than an hour. (Tr. at 18–19.) But the ALJ's review of the medical findings related to Claimant's osteoarthritis revealed that her pain was controlled with medication; that she had the ability to "walk occasionally . . . for very short distances," "make major and frequent changes in position without assistance," and "move independently with sufficient muscle strength to lift up completely from [a] chair or the bed with good position"; and that her knees' range of motion and strength were normal. (*Id.* at 19.) The ALJ also observed that a July 2017 examination of Claimant's feet "revealed only mild tenderness . . . but no swelling." (*Id.* at 20.) The ALJ is not required to accept Claimant's representations about the manner in which her pain affects her daily functioning if those representations "are inconsistent with the available evidence." *Dunn v. Colvin*, 607 F. App'x 264, 273–74 (4th Cir. 2015) (quoting *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996)). And mere treatment for a symptom does not mandate a finding of disability. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). The ALJ's RFC assessment reflects his consideration of Claimant's pain-related physical limitations, as he found that Claimant required five-minute breaks every hour to sit or stand; could only occasionally climb ramps and stairs and never climb ladders, ropes or scaffolds; and could only occasionally balance, stoop, kneel, crouch, and crawl. (Tr. at 16.) Nothing more was required.

16

Claimant also argues that her medication causes "poor concentration." (ECF No. 14 at 12.) The ALJ noted that Claimant testified about the "drowsiness" caused by her medication and that she reported not taking her medication "due to poor concentration." (Tr. at 19, 21.) However, the ALJ observed that during this time, Claimant was employed, taking courses toward a master's degree, and "maintaining hygiene and business/financial responsibilities aside from not going to work." (*Id.* at 21.) The ALJ was entitled to find that Claimant's alleged side effects were inconsistent with her activities of daily living. *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (per curiam). Moreover, when evaluating the severity of Claimant's mental impairments, the ALJ noted that Claimant had only mild deficiencies in memory, was able to understand and comprehend information, communicated effectively, had moderate difficulty concentrating "but no issues with task persistence or pace," and lived alone without much assistance. (*Id.* at 15–16.) The ALJ's RFC assessment, which specifies that Claimant "[c]an understand, retain and carry out simple instructions[] for extended two-hour periods in a normal work day/week," "perform simple, routine and repetitive tasks not at a production rate pace," and "have occasional interactions with public, coworkers, and supervisors," reflects his consideration of the observed limitations. (*Id.* at 16.) Claimant's argument to the contrary is without merit.

Accordingly, the undersigned **FINDS** that the ALJ adequately considered Claimant's subjective complaints of pain and the side effects of her medication.

C. *Consideration of Claimant's Impairments*

Finally, Claimant argues that the ALJ failed to account for her impairments in combination and in particular failed to emphasize the carpal tunnel and neuropathy in her hands and the impact of her obesity. (ECF No. 14 at 12–14.) As with her previous arguments, Claimant elaborates very little on the basis of her assertions. Therefore, the undersigned is again forced to rely on the ALJ's opinion to guess at Claimant's claimed errors.

"[T]he ALJ [is] required to consider the combined, synergistic effect of all of Claimant's medically determinable impairments, severe and non-severe, to accurately evaluate the extent of their resulting limitations on Claimant." *Blankenship v. Astrue*, No. 3:11-cv-00005, 2012 WL 259952, at *12 (S.D.W. Va. Jan. 27, 2012) (citing *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989)). "The ailments should not be fractionalized and considered in isolation; instead, their cumulative effect should be analyzed to determine the totality of their impact on the claimant's ability to engage in basic work activities." *Id.* (citing *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983)). Although the ALJ reviewed Claimant's impairments one-by-one in conducting the RFC assessment, his ultimate findings regarding Claimant's functional abilities reflect his consideration of all her impairments. For instance, when imposing additional limitations beyond those recommended by the two state medical consultants, the ALJ noted that Claimant "has had ongoing problems with neuropathy due to diabetes, as well as osteoarthritis in the right knee and ankles with morbid obesity." (Tr. at 21.) This demonstrates that the ALJ accounted for the limitations caused by those impairments and formulated Claimant's RFC based on that information. (*See id.* at 16.)

With respect to Claimant's carpal tunnel and the neuropathy in her hands, Claimant argues that the ALJ failed to consider Dr. MacFarland's notes that Claimant suffered pain and numbing "if she lifted anything over five pounds" and experienced "burning[] and the feeling of pins[] and needles in her hands." (ECF No. 14 at 13.) These excerpts from Dr. MacFarland's notes are based on Claimant's own statements, not on objective medical findings. (Tr. at 932, 939.) As the undersigned has already explained, the ALJ properly rejected Claimant's subjective complaints insofar as they were inconsistent with the record evidence. Further, the ALJ noted that Claimant's carpal tunnel diagnosis was accompanied by "positive findings on evaluation" but she had only one injection in her right elbow, which occurred prior to her alleged disability onset date. (*Id.* at

18

14, 19, *see id.* at 1576–77.) Her range of motion and strength were within normal or functional limits as recently as August 2017. (*Id.* at 14, 19; *see id.* at 1637, 1642.) "The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) (citing *Kasey v. Sullivan*, 3 F.3d 75, 79 (4th Cir. 1993)). Moreover, the ALJ placed additional limitations on Claimant's ability to perform light work based on the pain in her wrists and hands. (*See* Tr. at 16.)

With respect to Claimant's obesity, Claimant argues that "she suffers significantly from fatigue and low energy" that "affect her ability to sustain work activity." (ECF No. 14 at 14.) She also seems to suggest that the ALJ did not properly consider the severity of her obesity. (*See id.* at 13.) To the contrary, the ALJ determined that Claimant's obesity constituted a "severe" impairment, but he found that the evidence "does not establish presumptive disability." (Tr. at 13, 15.) Claimant does not disagree with the ALJ's conclusion. (*See* ECF No. 14 at 13–14.) The ALJ further found that Claimant's "obesity may increase the severity of coexisting and related impairments." (Tr. at 15.) He summarized her weight as documented in the record evidence while noting that recent examinations of Claimant's legs and feet were largely normal. (*Id.* at 19, 20.) Still, he added "additional limits" on Claimant's RFC due to the effects of Claimant's "morbid obesity" on her osteoarthritis, in particular. (*Id.* at 21.) Nothing in the ALJ's opinion indicates that he failed to adequately account for the impact of Claimant's obesity.

Accordingly, the undersigned **FINDS** that the ALJ adequately considered Claimant's impairments in combination as well as her carpal tunnel and neuropathy in her hands and the impact of her obesity.

## IV.  CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Claimant's request for judgment on the pleadings (ECF No. 14),

19

**GRANT** the Commissioner's request to affirm his decision (ECF No. 15), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown. Copies of any objections shall be served on opposing parties, District Judge Chambers, and the undersigned Magistrate Judge.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date: August 16, 2019

Dwane L. Tinsley
United States Magistrate Judge